The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Glenn A. Chin Appeal Number 21-1574. Attorney Sultan, please introduce yourself for the record and proceed with your argument. Good morning, Chief Judge Barron, and may it please the court. My name is James Sultan. I represent Glenn Chin. The court is obviously familiar with this case, having previously upheld Chin's convictions and remanded for resentencing. At this point, there are two sentencing guideline enhancements at issue. First, whether he had a reckless risk of death or serious bodily injury, and second, whether he knew or should have known that his offense conduct involved a large number of vulnerable victims. Chin argues that the district court erred in applying both to him. Let me say at the outset there were several facts that are relevant to both of these enhancements. First, there was no evidence at trial or at sentencing that anything that Chin did or failed to do caused the contamination of these drugs. Secondly, there was no evidence that Chin knew that any of the drugs that went out were contaminated. Third, Chin and his colleagues had made hundreds of thousands of dosages of this same drug over a period of years without any evidence of adverse incidents. Finally, Chin had no contact whatsoever with any of the patients who ultimately took the drugs or any of the medical providers or medical institutions that purchased them. The first adjustment is conscious or reckless risk. That term is not defined in this particular guideline. It is defined in other guidelines, but not in this one, and there is a split in the circuits over whether a defendant has to have any awareness at all of the risk in order for it to count as reckless. This court in the Cadden case, the companion case, cited with a CF signal, a Second Circuit case, Lushin, which holds that no awareness is necessary, that it's basically a should-have-known kind of standard. Mr. Zolkow, could you explain, just on your view, if the should-have-known is wrong, what is the meaning of the word conscious then? Because there is that or. I agree, Your Honor, that reckless cannot mean exactly the same as conscious, but whether it's a willful blindness standard, whether it is some awareness that doesn't rise to the level of assuming a knowing risk, I'm What's that second notion mean? Well, the Seventh and Eighth Circuits have said that it means some awareness. Some awareness. It can't just be a civil gross negligence standard. Yeah, but I guess what I'm trying to figure out is, if there's some awareness, how is it not conscious then? Well, I've tried to parse it myself, Your Honor. I don't think it's a very well-written guideline, but I think it is a leap to simply assume that it is essentially, especially in the face of how the involuntary manslaughter guideline is, recklessness is defined there, and this is really very comparable to our case. This is essentially kind of an involuntary manslaughter type of case. Cases, Supreme Court cases, such as Farmer v. Brennan and Voisin, which talk about recklessness in a criminal context. So I'm not sure what it means, but it can't just be, or it shouldn't just be, a civil standard. And this court obviously has the right to... Yes, Your Honor. Is it your position as a general proposition that the criminal law should not, in terms of mens rea, should not incorporate what you keep describing as a civil standard of recklessness? Are you making the more general claim that it simply is wrong, inappropriate for the criminal mens rea to incorporate, again, what you characterize as a civil standard? Is that essentially your position? Well, it is, Your Honor, essentially. And that, again, is what the Seventh and Eighth Circuits have agreed with. This court obviously is free to follow the Second Circuit approach, but I don't think that the district court was correct in simply assuming, based on that CF citation, without any reason analysis by this court, that this court had adopted that interpretation. If this court does adopt that interpretation, I would still argue that Shim doesn't satisfy it here, where he didn't know the drugs were tainted. There's no evidence anything he did tainted them, and it would be pure speculation that his failure to comply with certain protocols would end up killing people. Why is that when, just on that second point, assuming you're right, that the CF citation is just an indication that there was a legal question that the district court had not reached, rather than a conclusion about what the answer to that legal question would be. And then, assuming that the conscious or disregard formulation suggests that it can't be a requirement of awareness, otherwise they could have just said conscious. I'm not entirely sure I'd follow by the conclusion that on these facts, the district court could not have found, as it did, that it satisfied that standard, follows when the type of drug that was being compounded is this high-risk drug for which there is that, I forget what the exact, was it USP, whatever, that itself refers to the risk of death that can follow from not following the protocols of that USP, which is what the record shows, or could easily be found to have shown, was not followed. I agree, Your Honor, I've got a tougher argument there. I guess I would say USP 797, their guidelines, their protocols, they're not requirements of law, and that that should not be enough of a hook. I don't have a lot of time, can I turn now to the vulnerable victims? Before you do, I just want to make sure that neither of my colleagues has anything more to ask you about this one. I just want to add, if I might, one question following Judge Barron's, although I think I understood your answer. If the MPA is intended to be injected into the spine, and Mr. Chin was in charge of the clean room and having the expertise that he had, what is on the other side of that to suggest that he wouldn't know of the risk or the vulnerability? Yes, Your Honor, there's always a risk when you're dealing with something that's going to be injected into that sterile space that something could go wrong, but given the track record of hundreds of thousands of these dosages being made for years in the same way without any adverse incident, he wasn't really on notice to the extent of recklessness. I would say gross negligence, yes, but I understand it's a line and people could come out differently in different sides of that line. With respect to vulnerable victims, that enhancement was designed, according to case law, to enhance a punishment for particularly heinous predatory crimes. That's what it's for. There are two prongs that the victims were particularly vulnerable and that the defendant knew or should have known, and the individual characteristics of the victims are critical here. It's not here we have a generic patient. Before you go further on this point, I just want to be brief, and I'm hearing your argument now, not to be contesting that the patients qualify as victims, and that you're disputing whether they're vulnerable. I just want to make sure I'm right in hearing you that way. I think this court's prior decision made that pretty clear. I'm not contesting that they're victims of his relevant conduct, which I think I'm contesting that they're particularly vulnerable and that the defendant, if they are, that the defendant knew or should have known that they were particularly vulnerable. Counsel, just to anticipate what I think you're about to say, are you arguing that there had to be an individual determination that a victim had to be impaired in such a way that they could not protect themselves from what happened to them? In other words, is it an individualized inquiry that you're arguing for? My sense is, as a government's position, that their very status as patients and the dependency that goes with being a patient qualify them as vulnerable victims. Is it your position that's too sweeping a proposition that there has to be an individualized inquiry to establish their vulnerability? Well, Your Honor, yes, my position is it is too sweeping to say that all patients of medical providers are, per se, particularly vulnerable. I'm not saying that they have to look at each and every one separately, but I'm saying there has to be some characteristic of this particular group which makes them especially vulnerable. Simply having a doctor-patient relationship, that does sweep too broadly. It means that any case of medical fraud, basically, this enhancement would apply. Couldn't we distinguish? Let me just give you a spectrum. There's the patient who just goes for his annual checkup to the internist. That's on one pole, and I take it you're saying it can't be that any fraud that happens to that patient is a fraud that affects a vulnerable victim, because then it's just a patient. On the other side, the guidance is fairly clear that if there is some reason to think the patient is in particular need of the treatment, such as a cancer patient who is going to be evaluated with skepticism, the treatment that they're receiving, because of their desperate need for it, that makes them especially vulnerable. I take it you're not challenging that. Your Honor, I don't think it's any one factor. As far as that example in the application notes of someone who deliberately markets a bogus cancer cure, that is a predatory crime. That is somebody who basically is targeting people. Putting aside, if I don't focus on the motive of the actor, and I focus on the words of the reg, which is, is that victim vulnerable? I take it what makes that victim vulnerable is their particular need for the treatment, which is an unusual need. Well, but anybody who seeks medical treatment presumably has a need for the treatment. This Court has said the person has to be unusually vulnerable. Anyone who is seeking treatment is vulnerable. I'm saying a cancer patient is not your typical patient. I suppose that's correct, particularly where they're being targeted by someone who is deliberately marketing a great cancer cure. Just maybe, is the key to your point whether there was a targeting, or is the key to your point how vulnerable the victim is? Well, ultimately, part of the reason the victim is vulnerable, the vulnerability of the predator to exploit the victim. Okay, so then I think your focus is not on the targeting, it's on the vulnerability. It has to be. Yeah, okay, so you're not challenging the notion that a cancer patient is unusually vulnerable, are you? In certain circumstances, and that's why you have to look at the totality of circumstances. Well, I guess I'm not understanding. I thought you were saying to Judge Lopez you don't have to go actual patient by actual patient. You could look at the class of patients, such as cancer patients. Is that right? Well, that's what the application note says. I mean, the case law says... If I followed that through, I mean, I think you know where I'm heading, which may be why you're resisting, but why is this class of patients, given the particular type of treatment they're seeking, not alike enough to the cancer patient and distinct enough from the correct to find them to be vulnerable? I just think you're moving too far afield from the purpose and intent of this guideline provision, and it shouldn't be parsed. The language shouldn't be parsed that fine. It should be interpreted in the context of its purpose and intent, which is to go after particularly heinous crimes. Shin did not know this medication was contaminated. He had no contact with these patients. Let me ask you, maybe this will be clarifying to me. I just want to change the facts in the situation here to make it different in the following way. The application note describes a situation in which the defendant who's being sentenced directly defrauds the patient who's a cancer patient. Are you suggesting that if Shin had the exact same responsibilities that he had, and the drug that was being compounded was a cancer drug, that the downstream patients who would have wanted to receive that cancer drug and were then harmed by the receipt of it would not constitute vulnerable victims, even though they were cancer patients? Because they were cancer patients rather than back pain patients? Yes. I don't know how you make that distinction. I think it's kind of important that you have a position on that, because I understand your argument if you want to say that even in that, Shin would just simply not be liable under the vulnerable victims thing, no matter what kind of drug he was producing, so long as he didn't know the downstream effect of it, no matter how uniquely in need of it the recipients of that drug would be. If that's your position, I understand that this would be equally true if he was marketing a drug, if the compounding drug in question in the clean room was a drug that he knew was going to cancer patients. Well, that is my position, Your Honor. He would not be liable, and that goes particularly to the second prong of this test, which is that he knew or should have known. Counsel, where do you get this notion that the motivation of the defendant matters? You keep using this phrase, predatory. You seem to remove, alter the focus from the victim to the state of mind of the defendant. Where do you get this notion that a predatory motive has to be established in order to apply this enhancement? Well, Judge Lopez, I cite a lot of cases in the brief where that is the language that this court and other courts have used in terms of the intent of this particular enhancement. I agree this court has said that targeting is no longer required, so that's true, but I don't think that changes the intent of it. You're going to give somebody extra time in prison because it has to do with increased moral culpability. That's what this court has said. That's what other courts have said. It's a particularly heinous crime. It's taking advantage of the most vulnerable people in society, and Chin was not doing that. He certainly was not knowingly doing that, and he didn't know that the drugs were tainted, let alone evidence that he did anything to taint them, and let alone have any contact at all with the patients or the medical facilities. It's simply too attenuated and too much of a stretch to apply that enhancement to him for his relevant conduct, not even his criminal conduct in the context of this case. Anything further from... No. Thank you. Thank you. Thank you. Thank you, Attorney Sultan. At this time, if you could please mute your audio and video. Attorney Looney, if you could unmute your audio and video and introduce yourself on the record to begin. Good morning, Your Honor. Your Honors, Chris Looney, appearing on behalf of the United States. Where I'd like to start is with Mr. Sultan's comment regarding the reckless risk enhancement that it would have required pure speculation of the words he used for Mr. Chin to envision a risk of harm from his conduct, and I think even if consciousness were required, if the court below had found that Mr. Chin had acted with actual consciousness of the risk, the evidence would be more than sufficient to support that, and certainly under a lower recklessness standard. Do you think we can affirm on the ground that the... on the consciousness ground or not? No, not affirm it, but I think the evidence would be more than sufficient to do so under the consciousness prong, so certainly under... So if we don't think the... something less than consciousness or awareness is required, you agree we'd have to remand? If something less than consciousness was required? No, because... I'm sorry, if something equivalent to awareness was required, you would agree we'd have to remand? I believe that's the case, yes. But the evidence more than supports a finding under any standard, I want to make clear. And so, but that, for purposes of us, it doesn't matter if it might support it, we'd still have to remand, so we have to get to the question of whether it supports remand. Less than awareness? Yes, and it absolutely unequivocally does. Okay, but prior to that question, could you just address what your opponent is also arguing that awareness of something close to awareness, some awareness, is required. I take it you're saying that's not true? That's absolutely not true. Why do you say that? You pointed to the first place to start is the language of the Sentencing Guidelines, which applies to conscious or reckless risk of death or serious harm, and as you pointed out, the consciousness prong applies where the defendant is actually aware of that conduct, and so the reckless prong must necessarily apply to something else, where it's not, where the defendant is not actually aware of the risk. And how does willful blindness factor into this? Willful blindness is, in the criminal law, it's not a different standard than knowledge. It's a surrogate for knowledge, so I think that's from United States v. Melinda Perez. This court has explained that it's an alternative means of showing knowledge. It's not a different standard than would apply here, and each of these standards proffered by Mr. Soule and Mr. Chin suffers from the same flaw, that they require actual knowledge, whether it's willful blindness, which is a surrogate for actual knowledge, whether it's the standard set forth in Guidelines Section 2A1.4, which, again, requires actual knowledge of the risk and then disregard for that risk. Counsel, wouldn't you agree that the District Court may have overread our previous opinion? I mean, if we had wanted to say that there is a difference between conscious reckless disregard, if we wanted to actually adopt the Second Circuit standard, we could have said that. We just suggested, you ought to look at this. You know, it was a C signal. You seem to take the position that we actually decided that issue in our previous opinion. I mean, we could have done that, but we don't usually articulate a new standard by such a subtle signal, so aren't you and perhaps the District Court overreading what we did in the previous opinion? I think it's a logical reading of the opinion because the sequence of the opinion is rejecting the proposition that in the United States v. Cadden, that Mr. Cadden's lack of actual knowledge of the risk posed by his conduct was sufficient to affirm the denial of the enhancement, and then the opinion said that's because the District Court has yet to apply the proper mens rea standard to consider this enhancement, and then it said CF, United States v. Cadden, didn't consider relevant conduct. It didn't consider relevant conduct. But wasn't that the reason the Cadden court gave for saying we had to remand because the District Court never considered relevant conduct. It never had occasion to reach the question of what was the proper mens rea with the relevant conduct in place. That's correct in the Cadden decision, but the Chin decision does not specifically reference United States v. Lucien, but it has the same logic where Mr. Chin asked this court to affirm denial of the enhancement on the grounds that he had not acted with actual knowledge, and the courts in United States v. Chin said that doesn't resolve the question of the appropriate mens rea because there is a conscious or reckless risk prong and they're written disjunctively. But what I'm saying is the District Court had simply never settled on that question because it hadn't thought relevant conduct was the right lens through which to be evaluating at all, which is what I thought was the reason we vacated in both instances. That is the reason we vacated in both instances because they hadn't considered the relevant conduct, but in Chin, they offered the alternative ground for affirmance. What we were saying, I thought what we were saying is, well, maybe so, but that depends on whether awareness or recklessness is the right standard, so figure that out first. I think in the Chin decision, if actual awareness of the risk was required, then there would have been no need for a remand. But there was a contestation about whether the record showed that there was actual knowledge or not, wasn't there? So there was no reason for us to have to resolve that factual dispute until we knew whether as a legal matter it needed to be resolved, and that would depend on whether actual awareness was required or whether something less than that was required. And therefore, remand, let that legal standard be resolved first, then we'll know what facts we have to evaluate. Even, I think, I understand the point, I think it is the case that if actual, if a standard required actual awareness, this court could have affirmed on that ground. Yeah, except we would have to make a determination whether the record supported a finding of actual knowledge, which was in dispute in Chin, wasn't it? Well, there was the factual finding from the court below. Right, that was being disputed on appeal, whether the record supported that, I thought in Chin, no. I don't think we disputed that, the government didn't dispute that the facts were sufficient to... No, the defendant was disputing whether the evidence sufficed to show actual knowledge. They did. So there was no need for us to evaluate that claim by the defendant on appeal if the legal standard would not require a proof of actual knowledge. Therefore, it would make sense to remand and let the district court... Is that not right? Unless I'm misunderstanding, I don't think that's quite right, because the application had been denied the first time, and so that denial came up, and Mr. Chin asked for the denial to be affirmed on the grounds that the district court had found, and it made a factual finding, that Mr. Chin had not acted with actual knowledge. You were not contesting that? No, we believe the evidence does support it, but for purposes of that enhancement, we didn't contest that at that time. No, I don't believe so. Beyond what this court said in Cadden and Chin, I do want to make the additional point that the lack of an actual awareness requirement must be a part... Recklessness cannot require actual awareness of the risk, because if so, it would collapse the prong. So even if this court were looking at it in the first instance, it should adopt the standard proposed in Lewisham and adopted in United States v. Johansson and United States v. Maestas. Each of those decisions properly maintains this disjunctive structure, and none of the alternatives offered by Mr. Chin maintain that disjunctive structure. So there is really... offer to some standard that's akin to what the district court applied in this case. Do you want to address quickly the vulnerable victim point? I do. And starting with the question from Judge Lipez about whether an individualized inquiry must be made, the answer under United States v. Gill, this court's precedent, is no, and the question is whether membership in a class, whether the characteristics of that class alone are sufficient for inference that the victims are vulnerable and that vulnerability should be known to the defendant. Here, the factual finding by the district court is absolutely accurate and supports that inference of vulnerability, which is that all of the patients required an injectable medication to their spine and any person who entrusts a medical personnel to inject a foreign substance into their spine is, as the district court said, the very definition of a vulnerable victim. The logic of your position, I guess, to return to the spectrum inquiry that Judge Barron posed, I mean, it seems that in every doctor-patient relationship, there is deference to the doctor, the placement of trust in the doctor, reliance on the doctor to make sound judgments on medications, the efficacy, the purity of the medication, all of that. And so why doesn't the logic of your position that in every doctor-patient relationship, there is vulnerability on the part of the victim? And if that's so, it seems to me a very sweeping proposition, which might take the vulnerable victim guideline far beyond what it was intended to do. How do you respond to that concern? Well, I think looking at this case, the particular facts leading to that vulnerability are particularly compelling. These were, as I said, injectable steroids that were injected into the spine. There's testimony in this case, and this comes from a NACC technician named Owen Finnegan on day seven of the trial. He testified that Mr. Chin had explained to him that we need to be particularly vigilant in producing injectable steroids because they go into the cerebral spinal fluid, they pass the immune system, they go straight to the brain, and if they're contaminated, if not properly made, they could really mess somebody up. Mr. Chin used a stronger word than mess, but really mess someone up. So there is a particular risk to these patients because of the condition requiring an injection into their spine. Well, we go to get vaccinated. The doctor administers the vaccine, not knowing that the vaccine is contaminated. Just by the mere fact that we go into that office and are asking to be vaccinated in a safe way, I mean, aren't we as vulnerable in that situation as the patients here who were seeking these sterile injections? What's the difference between the two? Well, I think part of it is the nature of the injection. They're identified as high-risk sterile compounds. And so that is part of the distinction, which is that because they require spinal injections, they're uniquely vulnerable to this kind of conduct, to improperly compounded medications where those medications aren't safe. There's that vulnerability, and there's the inability that they're required to get that to address their medical condition. And they have no capacity to detect or prevent the harm that these drugs will impose on them. Well, I think nothing you say there suggests a difference between the position that the victims here were in and the position that you or I would be in when we go into the doctor's office to be vaccinated. There is a difference. Are you taking the position that the person who is being vaccinated is not unusually vulnerable? I would not take that position wholesale. And I think it would require some evaluation of the conduct and the nature of how this, if those drugs are improperly produced, and produced in a way that's unsafe, and then delivered to patients who have no way of identifying that those drugs are unsafe. I think in the vaccine case, it could be appropriate to apply the vulnerable victim enhancement there. They are very much akin to the example from the guidelines and the question that this court asked on remand whether... I just want to stop you there because the one thing that I'm not entirely sure, if we did not decide the question of whether the downstream patients could be victims, and I understand that it appears that the defendant reads our opinion to have decided that question, but what is the government's view of who is a victim and how we determine how far from the crime you can be and still be the victim of it? Because the application, though, it's obviously very easy because the person being defrauded is the patient. Here, of course, the crime is a fraud crime and the victim of it was not defrauded directly. There was no misrepresentation to that patient by the defendant here, and yet you're treating that person as a victim for purposes of the guideline. What is the government's view of how we define the ambit of who a victim of a fraud crime is? I think the answer is given right in the guidelines, which is they knew or should have known that the victims of their offense are vulnerable victims. We look at the full conduct, full offense conduct, and it's whether they knew or should have known that there were victims who had an unusual vulnerability. Here, the compounds produced by NECC were used precisely as intended. They were marketed as high-risk sterile compounds to hospitals and pharmacies, which then administered them to patients. The causal chain was not really broken in any meaningful way by pharmacists, doctors, or hospitals because they did precisely what Mr. Chin expected or knew or should have known was going to happen with them, which is they would be injected into the spines of patients. The United States v. Milstein, which is a case out of the Second Circuit, said in a brief, is right on point in this case. Just to press it, with the emotional distress of children of a patient, could that be taken into account in determining whether the children of the patients were vulnerable victims? I think that goes beyond unless... So why? That's what I'm asking. What's the stopping point you want us to draw? Again, we're looking at this class of victims who have this characteristic of requiring spinal injections. That classroom doesn't include whether they had children. It may be anticipated that some would have children or not, but you would not know that any member of that class has or does not have children, relatives, others. But as to each victim in this case, you actually do know they require this spinal injection. So what happened to these victims in terms of receiving this medication in their spine is exactly what Mr. Chin anticipated would happen. So it falls within that know or should have known framework. And I do just want to complete the reference to United States v. Milstein, which is very similar. That's a case where the defendant marketed misbranded drugs used for Parkinson's and fertility issues. They marketed those to pharmacists and hospitals just as here. They were misbranded. They were marketed improperly. And the court there applied the Vulnerable Victim Enhancement based on the vulnerability of those patients there, even though there was this intervening hospital and pharmacist. So that really is right on point and I think demonstrates the appropriateness of doing that as long as you can expect these patients to be delivered in a particular manner. Thank you. Anything further from the panel? No. Thank you. Thank you, Adam. That concludes argument in this case. Attorney Sultan and Attorney Looney. You should disconnect from the hearing at this time.